OPINION OF THE COURT
William H. Keniry, J.
In this CPLR article 78 proceeding the petitioner St. Lawrence County Department of Social Services (DSS) challenges the determination of the respondent New York State Division for Youth (DFY) holding petitioner responsible for 50% of the confinement costs of Mark P., a juvenile offender.
*902 According to the petition, Mark P. committed the crime of robbery in the first degree on January 9, 1987. The robbery took place in Onondaga County. Mark P., on the date of the crime and for about three years previously, lived with his mother in Oswego County. Mark P. was arraigned in Onondaga County on January 15, 1987 and released in his own recognizance to his father with the understanding that the boy would reside with his father in St. Lawrence County pending the disposition of the case. Mark P. was indicted by an Onondaga County Grand Jury on March 20, 1987 and was immediately remanded into the custody of DFY which placed him in a detention center. Bail was posted by his family on March 20, 1987 and the youth resumed residence with his father. On August 4, 1987, Mark P. entered a guilty plea and the court remanded him into DFY’s custody. On September 9, 1987, Mark P. was sentenced to six months’ incarceration plus five years’ probation. On December 1, 1987, he was again released from a DFY facility into the custody of his father. He resided in St. Lawrence County until March 11, 1988 when he allegedly violated the court’s order of disposition. The court immediately remanded him into DFY’s custody. On May 10, 1988, the court revoked Mark P.’s probation and sentenced him to an indeterminate prison term of 114 to 3% years.
As a result of Mark P.’s confinements in DFY’s facilities, petitioner was billed the sum of $36,150.50 under section 529 of the Executive Law. Such sum represents 50% of DFY’s costs for confining Mark P. at various times between March 30, 1987 and September 30, 1988 and was charged to the petitioner on the basis that Mark P., as a juvenile offender, resided in St. Lawrence County at the "time of commitment”. The petitioner has paid such charges under protest.
Petitioner contends that Mark. P., at the time he committed the underlying robbery, resided with his mother in Oswego County and that his subsequent postarrest residence with his father in St. Lawrence County was only temporary. Petitioner argues that, since Mark P. was a resident of Oswego County at the time the robbery was committed, Oswego County not St. Lawrence County should be responsible for the local share of DFY’s confinement expenses. Petitioner alleges that respondent’s assessment of the confinement expenses against it is arbitrary and capricious and contrary to law.
The respondent argues that its assessment to St. Lawrence County of 50% of the costs of confining Mark P. was in full *903 compliance with section 529 (2) of the Executive Law and its actions were therefore not arbitrary or capricious.
Section 529 (2) of the Executive Law reads as follows: "2. Expenditures made by the division for youth for care, maintenance and supervision furnished youth, including alleged and adjudicated juvenile delinquents and persons in need of supervision, placed or referred, pursuant to titles two or three of this article, and juvenile offenders committed pursuant to section 70.05 of the penal law, in the division’s schools, centers, forestry camps and short-term adolescent training programs, hereafter referred to in this section as facilities, shall be subject to reimbursement to the state by the social services district from which the youth was placed or by the social services district in which the juvenile offender resided at the time of commitment, in accordance with this section and the regulations of the division, as follows: fifty percent of the amount expended for care, maintenance and supervision of local charges including juvenile offenders, except that with respect to juvenile offenders, reimbursement shall be in accordance with the following schedule: twelve and one-half percent of the amount expended for care, maintenance and supervision of juvenile offenders from July first, nineteen hundred eighty-three through June thirtieth, nineteen hundred eighty-four; twenty-five percent of the amount expended for care, maintenance and supervision of juvenile offenders from July first, nineteen hundred eighty-four through June thirtieth, nineteen hundred eighty-five; thirty-seven and one-half percent of the amount expended for care, maintenance and supervision of juvenile offenders from July first, nineteen hundred eighty-five through June thirtieth, nineteen hundred eighty-six; fifty percent of the amount expended for care, maintenance and supervision of juvenile offenders after June thirtieth, nineteen hundred eighty-six” (emphasis added).
It is conceded that Mark P. is a "juvenile [offender] committed pursuant to section 70.05 of the penal law”. Therefore the social services district "in which the juvenile offender resided at the time of commitment” is responsible to reimburse the State for a percentage of the expenses incurred for such confinement (Executive Law § 529 [2]). Executive Law § 529 (2) is clear on its face. Mark P. was "committed pursuant to section 70.05 of the penal law” on September 9, 1987 following sentencing for his crime by the Onondaga County Court. On that date he then resided in St. Lawrence County, not Oswego County. The court notes that the only evidence presented by *904 petitioner to advance its argument that Mark P.’s residence in St. Lawrence County was only of a temporary or interim nature is set forth in the affidavit of petitioner’s probation director who also is Mark P.’s aunt.* The record does not include any court documents which would indicate that the placement of Mark with his father was a court-imposed term of his release, nor does it include any statement from Mark or his parents concerning his residence either before or after the crime was committed.
The proper construction of the term residence ordinarily depends upon the particular subject matter and the context in which it is used (State of New York v Collins, 78 AD2d 295). There is no precedent to guide the court in construing the language of the statute at issue. Petitioner analogizes this situation to that involving the residence of individuals applying for social services or medical assistance benefits. Section 62 of the Social Services Law requires a public welfare district to provide assistance to "any person who resides or is found in its territory”. Petitioner also relies upon 1978 Opinions of the State Comptroller No. 78-454, at 81, which states that under section 62 of the Social Services Law, the social services district where a juvenile’s family resided immediately prior to his commitment to a youth detention facility is responsible for all future costs of confinement.
Section 62 of the Social Services Law and section 529 (2) of the Executive Law are not analogous. The statutory language is not the same and the purposes of the statutes are different. Here, Mark P. was residing in St. Lawrence County at the time he was "committed pursuant to section 70.05 of the penal law”. Accordingly the court is constrained to accept the interpretation of the phrase "residence at the time of commitment” accorded by the respondent. Such interpretation is not arbitrary or capricious. Although the court understands the petitioner’s reluctance to bear financial responsibility for the incarceration of Mark P., its remedy lies in the legislative process.
The petition is denied, without costs.

 The petition itself never specifically raises the issue of the temporary or permanent nature of Mark P.’s residence in St. Lawrence County. However the implication is raised in petitioner’s memorandum of law that his residency was of a transitory nature. The court discusses the issue for that reason.